# APPENDIX A

# FINAL JUDGMENTS
(Ordered by Case Listing in the Case Caption)

UNITED STATES v.
ATLANTIC COMPANY, *et al*.

Civil Action No.: 719

Year Judgment Entered: 1952

IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE MIDDLE DISTRICT OF GEORGIA

MACON DIVISION

---

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : |  |
| Plaintiff | : |  |
| v. | : | Civil Action |
| ATLANTIC COMPANY, | : | No. 719 |
| CHATTANOOGA ICE DELIVERY CO., |  |  |
| CITY ICE COMPANY, | : |  |
| CITY ICE DELIVERY COMPANY, | : |  |
| ICE SERVICE COMPANY, |  |  |
| ORLANDO ICE DELIVERY COMPANY, | : |  |
| SOUTHERN UNITED ICE COMPANY, |  |  |
| FRED W. BEAZLEY, and | : |  |
| CLINTON D. CASTLEBERRY, |  |  |
| Defendants | : |  |

---

JUNE 24, 1952

---

## F I N A L   J U D G M E N T

In accordance with the findings of fact and conclusions of law filed contemporaneously herewith, it is hereby ORDERED, ADJUDGED AND DECREED, as follows:

### 1.

The complaint is dismissed both as to the defendant, Chattanooga Ice Delivery Company and defendant, Orlando Ice Delivery Company, in accordance with the amendment by the Plaintiff.

### 2.

That each of the remaining defendants, and its officers, directors, agents and employees and their respective successors, assignees and transferees are perpetually enjoined from:

(a) Entering into agreements, arrangements, or understandings to fix, determine, or agree upon the price at which ice is sold or shipped when the result of such agreement, arrangement or understanding will necessarily and directly affect the interstate transportation of ice

or other commodity as to the cost of such transportation or the availability of ice to preserve such commodity, or will stabilize the price of ice to railroads to be used for convenience and health of passengers being moved and transported in interstate commerce; and

(b)  From selling and shipping ice in interstate commerce below the selling corporate defendant's cost of manufacture, sale and shipment except for the purpose of meeting competition in said sale and shipment of ice in interstate commerce; and

(c)  Engaging in any practice designed to induce others to refrain from competing in the sale and shipment of ice in interstate commerce, or the furnishing of icing services to the Fruit Growers Express Company or other railway express companies or to railroads for the preservation of food or food products which are being transported in interstate commerce, or engaging in any practice which necessarily stabilizes the price of ice to railroads to be used for convenience and health of passengers being moved and transported in interstate commerce; and

(d)  Creating pooling agreements or arrangements whereby the shipment and sale of ice in interstate commerce, or the furnishing of icing services to the Fruit Growers Express Company or other railway express companies or railroads for the preservation of food or food products which are being transported in interstate commerce is shaped, divided, limited, or discontinued; or creating any such agreements which necessarily stabilize the price of ice to railroads to be used for convenience and health of passengers being moved and transported in interstate commerce; and

(e)  Using any ice delivery company or other common sales agency to sell and ship in interstate commerce the total amount of ice produced by the defendants and their competitors or to furnish the total icing services of the defendants and their competitors to the Fruit Growers Express Company or other railway express companies or railroads for the preservation of food or food products which are being

transported in interstate commerce; or using any common sales agency so as to necessarily stabilize the price of ice to railroads to be used for convenience and health of passengers being moved and transported in interstate commerce; and

(f) Allocating customers between the defendants and competitors in shipping and selling ice in interstate commerce or in furnishing of icing services to Fruit Growers Express Company or other railway express companies or railroads for the preservation of food or food products which are being transported in interstate commerce; or allocating customers in such a way as to necessarily stabilize the price of ice to railroads to be used for convenience and health of passengers being moved and transported in interstate commerce; and

(g) Communicating to any competitor or association or central agency of competitors, for the purpose of fixing prices, any information with respect to bids or quotations offered or to be offered by any defendant in connection with the shipment and sale of ice in interstate commerce or the furnishing of icing services to Fruit Growers Express Company or other railway express companies or railroads for the preservation of food or food products which are being transported in interstate commerce, or where such action necessarily and directly stabilizes the price of ice to railroads to be used for convenience and health of passengers being moved and transported in interstate commerce;

### 3.

That each of the defendants, and its officers, directors, agents and employees and their respective successors, assignees and transferees be perpetually enjoined from directly or indirectly acquiring the assets or capital stock of others in competition with said acquiring defendant or defendants in the shipment and sale of ice in interstate commerce or in the furnishing of icing services to the Fruit Growers Express Company or other railway express companies or railroads for the preservation of food or food products which are being transported in interstate commerce,

where the effect of such acquisition will be to necessarily and directly lessen competition between the corporation whose stock or assets is so acquired and the corporation making the acquisition in the shipment and sale of ice in interstate commerce or in the furnishing of icing services to the Fruit Growers Express Company or other railway express companies or railroads for the preservation of food or food products which are being transported in interstate commerce, or where the necessary effect will be to stabilize the price of ice to railroads to be used for the convenience and health of passengers being moved and transported in interstate commerce.

4.

That the defendants, Atlantic Company and Southern United Ice Company, be perpetually restrained and enjoined from the sale or distribution of ice or the furnishing of icing services except under their own names or through defendants, City Ice Company, City Ice Delivery Company, and Ice Delivery Company, under trade name, or through subsidiary companies, both of which are adequately identified as being owned, controlled, or affiliated with said defendants or one of them.

5.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that if any corporate or individual defendant is now a party to any contract or agreement which permits any of the practices which are enjoined in paragraph 2 of this decree, then any such contract is hereby expressly declared void and of no further effect.

6.

Jurisdiction of this cause is retained by this Court for the purpose of enabling either of the parties to this judgment to apply to the Court any time for such further orders or directions as may be necessary or appropriate for the construction or carrying out of this judgment and any modification pursuant to such construction, for the enforcement of compliance therewith and for the punishment of violations hereof. Nothing herein shall be construed to prohibit any action taken by the defendants in good faith in compliance with the orders, regulations, or provisions of any governmental agency having jurisdiction

thereof relating to the manufacture, sale, and shipment or distribution
of ice or the furnishing of icing services by the defendants in cases
of emergency or war.

### 7.

This judgment shall not be effective until one hundred twenty
(120) days after the entry hereof, with the exception of the provisions
contained in paragraph 2(b) above, which shall become effective thirty
(30) days after the entry hereof.

This the _____ 24 _____ day of June, 1952.

> (Signed)  T. Hoyt Davis
> UNITED STATES DISTRICT JUDGE

UNITED STATES v.
HEYWARD ALLEN MOTOR COMPANY, INC., *et al*.

Civil Action No.: 771

Year Judgment Entered: 1971

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF GEORGIA

ATHENS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. 771 |
| HEYWARD ALLEN MOTOR COMPANY, INC., | ) | Entered: June 26, 1971 |
| J. SWANTON IVY, INC., | ) | |
| TRUSSELL FORD, INC., | ) | |
| PATTON BROTHERS, INC., | ) | |
| DAVIDSON PONTIAC-BUICK, INC. | ) | |
| CLARKE COUNTY MOTORS, INC., | ) | |
| SILVEY MOTOR COMPANY, INC. | ) | |
| PHILLIPS BODY AND PAINT SHOP, INC., | ) | |
| CARNEY'S BODY & PAINT SHOP, INC., | ) | |
| ATHENS AUTOMOBILE DEALERS ASSOCIATION | ) | |
| and INDEPENDENT GARAGE OWNERS OF ATHENS, | ) | |
| Defendants. | ) | |

FINAL JUDGMENT

Plaintiff, United States of America, having filed its
Complaint herein on April 8, 1971 and plaintiff and the
defendants, by their respective attorneys, having consented
to the entry of this Final Judgment, without trial or
adjudication of any issue of fact or law herein, and with-
out admission by any party with respect to any such issue,
and without this Final Judgment constituting evidence or
admission by any party with respect to any such issue;

NOW, THEREFORE, before the taking of any testimony and
without adjudication of any issue of fact or law herein
upon the consent of the parties hereto, it is hereby

ORDERED, ADJUDGED and DECREED as follows:

I

This Court has jurisdiction over the subject matter
herein and of the parties hereto.  The Complaint states
a claim against the defendants upon which relief may be
granted under Section 1 of the Act of Congress of July 2,
1890, entitled "An Act to protect trade and commerce
against unlawful restraints and monopolies," as amended,
commonly known as the Sherman Act.

II

As used in this Final Judgment:

(A)  "Automobile repairs" means the application of
parts and labor to damaged automobiles for the purpose
of repairing them;

(B)  "Repair Shop" means any person engaged in
performing automobile repairs;

(C)  "Parts" means new and used automobile parts
utilized in repairing damaged automobiles.

III

The provisions of this Final Judgment applicable
to any of the defendants shall also apply to its officers,
directors, agents, employees, subsidiaries, successors,
and assigns, and to all other persons in active concert
or participation with any of them who shall have received
actual notice of this Final Judgment by personal service
or otherwise; provided, however, that the provisions of
this Final Judgment shall not apply to transactions between
defendants which are controlled by the same person and
provided further, that for purposes of this Final Judgment,
"control" shall be defined as ownership of more than 50%
of the outstanding common stock of any defendant.

IV

Each defendant is enjoined and restrained from, directly or indirectly:

(A)  Entering into, adhering to, maintaining or furthering any contract, agreement, understanding, plan or program with any repair shop to fix, determine, maintain or stabilize:

a.  The prices, discounts, markups or other terms and conditions at which parts are sold by repair shops to third parties;

b.  The rates charged third parties for the labor involved in performing automobile repairs;

c.  The prices charged or deposits required to estimate the cost of performing automobile repairs.

(B)  Advocating, suggesting, urging, inducing, threatening, coercing, intimidating, or compelling any repair shop to adopt, use or adhere to:

a.  Uniform or specific prices, discounts, markups or other terms and conditions at which parts are sold by repair shops to third parties;

b.  Uniform or specific rates charged third parties for the labor involved in performing automobile repairs.

V

Each of the defendants is ordered and directed, not later than ninety (90) days following the date of entry of this Final Judgment, independently and individually to review and redetermine, based upon its own costs, business judgments and other lawful considerations:  (1) the prices, discounts, markups or other terms and conditions at which

3

it sells parts for automobile repairs; (2) the rates it charges for labor involved in performing automobile repairs; and, (3) the prices charged or deposits required to estimate the cost of automobile repairs.

### VI

Each corporate defendant is enjoined and restrained from organizing, joining, furthering, supporting, or participating in any activities of, a trade association with knowledge that the purpose, conduct, or activities of the same are inconsistent with the prohibitions contained in Paragraph IV of this Final Judgment.

### VII

For a period of 10 years from the date of entry of this Final Judgment each defendant is ordered to file with the plaintiff, on each anniversary date of this Final Judgment, a report setting forth the steps it has taken during the prior year to advise the defendants' appropriate officers, directors, employees and members of its and their obligation under this Final Judgment.

### VIII

For the purpose of determining or securing compliance with this Final Judgment, duly authorized representatives of the Department of Justice shall, on written request of the Attorney General, or the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to defendant made to its principal office, be permitted, subject to any legally recognized privilege:

(A)   Access, during office hours of defendant, to all books, ledgers, accounts, correspondence, memoranda, and

4

other records and documents in the possession or under
the control of the defendant relating to any matters
contained in this Final Judgment;

(B)  Subject to the reasonable convenience of the
defendant, and without restraint or interference from it,
to interview officers, directors, employees or agents of
the defendant, who may have counsel present, regarding
any such matters.

Under written request of the Attorney General, or the
Assistant Attorney General in charge of the Antitrust
Division, defendant shall submit such reports in writing
with respect to the matters contained in this Final Judgment
as may from time to time be requested.

No information obtained by the means permitted in
this Paragraph VIII shall be divulged by any representative
of the Department of Justice to any person other than
a duly authorized representative of the Executive Branch
of the plaintiff, except in the course of legal proceedings
in which the United States is a party for the purpose of
securing compliance with this Final Judgment or as
otherwise required by law.

Jurisdiction is retained for the purpose of enabling
any of the parties to this Final Judgment to apply to this
Court at any time for such further orders and directions
as may be necessary or appropriate for the construction
or carrying out of this Final Judgment or for the modifi-
cation of any of the provisions herein and for the
enforcement of compliance therewith and the punishment
of the violation of any of the provisions contained herein.

Dated:  **June 26, 1971**

                        **/s/   WILBUR OWENS**
                        UNITED STATES DISTRICT JUDGE
                        A13

UNITED STATES v.
SOUTHEASTERN PEANUT ASSOCIATION

Civil Action No.: 777

Year Judgment Entered: 1973

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF GEORGIA

AMERICUS DIVISION

- - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

               Plaintiff,

    -versus-

SOUTHEASTERN PEANUT ASSOCIATION,

             Defendant.

- - - - - - - - - - - - - - - - -

CIVIL ACTION NO. 777

Filed:  Dec. 15, 1972

Entered: January 15, 1973

## FINAL JUDGMENT

Plaintiff, the United States of America, having filed
its complaint herein on June 30, 1972, and plaintiff and
defendant by their respective attorneys having each consented
to the entry of this Final Judgment without trial or
adjudication of any issue of fact or law herein and without
this Final Judgment constituting evidence or an admission
by any party with respect to any such issue:

NOW, THEREFORE, before any testimony has been taken
and without trial or adjudication of any issue of fact or
law herein, and upon consent of the parties, it is hereby

ORDERED, ADJUDGED AND DECREED, as follows:

I

This Court has jurisdiction of the subject matter of
this action and of the parties hereto.  The Complaint states
a claim upon which relief may be granted against the defendant
under Section 1 of the Act of Congress of July 2, 1890,
entitled "An act to protect trade and commerce against
unlawful restraints and monopolies," as amended (15 U.S.C. §1),

commonly known as the Sherman Act.

## II

The provisions of this Final Judgment applicable to defendant shall apply to such defendant, its successors, subsidiaries, assigns, officers, directors, agents, servants employees and members, and to all other persons and organizations in active concert or participation with it who receive actual notice of this Final Judgment by personal service or otherwise.

## III

The defendant, whether acting unilaterally or in concert or agreement with any other person, is enjoined and restrained:

(A)  From fixing, establishing, or maintaining, from urging, recommending, or suggesting, and from publishing or distributing any schedule, form of contract, or other recommendation concerning:

   (1)   the commission or fee to be paid to brokers of shelled peanuts;

   (2)   the amount or percentage by which contract prices for shelled peanuts will be changed in the event of a change in delivery time, or on account of damaged, split or broken peanuts; or

   (3)   the use of credit in sales of shelled peanuts.

Provided, however, that upon the expiration of a ten year period which shall commence upon the date of entry of this Final Judgment, the defendant shall not be prohibited

2

from incorporating in its recommended trading rules, or
otherwise publishing and distributing

     (1)   a schedule suggesting percentages or
         amounts by which contract prices may
         be redu ed in the event of damaged,
         split or broken peanuts; or

     (2)   a provision suggesting that sales of
         shelled peanuts shall be for cash
         unless otherwise agreed by the parties
         to the transaction,

so long as any such rule, schedule or provision expressly
states that it may be freely adopted, modified or disregarded
by the parties to the transaction.

    (B)  From adopting, adhering to, maintaining, enforcing,
or claiming any rights under any by-law, rule, regulation,
plan or program which restricts or limits, or purports to
restrict or limit the right of any of its members to
determine, in accordance with his own business judgment:

     (1)   the commission or fee to be paid to
         brokers of shelled peanuts;

     (2)   the amount or percentage by which contract
         prices for shelled peanuts will be changed
         in the event of a change in delivery time,
         or on account of damaged, split or broken
         peanuts; or

     (3)   the use of credit in sales of shelled
         peanuts.

    (C)  From boycotting any broker of shelled peanuts, or
requiring, urging or requesting any of its members not to do

3

business with any broker of shelled peanuts.

## IV

(A)  The defendant is ordered and directed within ninety (90) days from t' date of entry of this Final Judgment to amend its by-laws, rules and regulations by eliminating therefrom any provision which is contrary to or inconsistent with any provision of this Final Judgment.

(B)  Upon amendment of its by-laws, rules and regulations as aforesaid, defendant is thereafter enjoined and restrained from adopting, adhering to, enforcing or claiming any rights under any by-law, rule or regulation which is contrary to or inconsistent with any of the provisions of this Final Judgment.

## V

Defendant is ordered and directed to mail within sixty (60) days after the date of entry of this Final Judgment, a copy thereof to each of its members and to each broker of shelled peanuts known to defendant and within one hundred twenty (120) days from the aforesaid date of entry to file with the Clerk of this Court, an affidavit setting forth the fact and manner of compliance with this Section V and Section IV(A) above.

## VI

Defendant is ordered to file with the Plaintiff on each anniversary date of the entry of this Final Judgment for a period of ten years, a report setting forth the steps it has taken during the prior year to advise defendant's appropriate officers, directors and employees of its and their obligations under this Final Judgment.

4

VII

For the purpose of determining or securing compliance with this Final Judgment, and for no other purpose, duly authorized representatives of the Department of Justice shall upon written request of the Attorney General or the Assistant Attorney General in charge of the Antitrust Division, upon reasonable notice to defendant made to its principal office, be permitted, subject to any legally recognized privilege:

(A)   Access during the office hours of said defendant to all books, ledgers, accounts, correspondence, memoranda, and other records and documents in the possession or control of defendant relating to any of the matters contained in this Final Judgment; and

(B)   Subject to the reasonable convenience of defendant and without restraint or interference from it, to interview the officers and employees of defendant who may have counsel present, regarding any such matters.

For the purpose of determining or securing compliance with this Final Judgment, defendant upon the written request of the Attorney General or the Assistant Attorney General in charge of the Antitrust Division, shall submit such written reports relating to any of the matters contained in this Final Judgment as may from time to time be requested. No information obtained by the means provided in this Section shall be divulged by any representative of the Department of Justice to any person other than a duly authorized representative of the Executive Branch of the plaintiff except in the course of legal proceedings to

5

which the United States is a party for the purpose of
securing compliance with this Final Judgment, or as other-
wise required by law.

### VIII

Jurisdiction is retained for the purpose of enabling
any of the parties to this Final Judgment to apply to this
Court at any time for such further orders and directions as
may be necessary or appropriate for the construction or
carrying out of this Final Judgment, or the modification of
any of the provisions thereof or for the enforcement of
compliance therewith, and for the punishment of violations
of any of the provisions contained herein.

/s/ WILBUR D. OWENS, JR.
United States District Judge

Dated: January 15, 1973

UNITED STATES v.
TOM'S FOODS LTD.

Civil Action No.: 75-28-COL

Year Judgment Entered: 1975

# Trade Regulation Reporter - Trade Cases (1932 - 1992), United States v. Tom's Foods Ltd., U.S. District Court, M.D. Georgia, 1975-2 Trade Cases ¶60,416, (Jul. 1, 1975)

[Click to open document in a browser](#)

United States v. Tom's Foods Ltd.

1975-2 Trade Cases ¶60,416. U.S. District Court, M.D. Georgia, Columbus Division. Civil Action No. 75-28-COL. Entered July 1, 1975. (Competitive impact statement and other matters filed with settlement: 40 *Federal Register* 16859). Case No. 2449, Antitrust Division, Department of Justice.

## Sherman Act

**Customer Restrictions—Prices—Snack Foods Manufacturer—Agreements with Competitors and Distributors—Consent Decree.**—A manufacturer of snack foods was prohibited by a consent decree from agreeing with any competitor to restrict or interfere with the sale of such products to distributors or to restrict, fix, or interfere with the prices paid by distributors for such products. For a period of ten years, the manufacturer was barred from agreeing with any distributor to restrict or interfere with purchases of snack food products by any distributor from any other manufacturer or to restrict, fix, or interfere with prices for such purchases.

**For plaintiff:** Thomas E. Kauper, Asst. Atty. Gen., Baddia J. Rashid, Gerald A. Connell, Robert J. Ludwig, Gary M. Cohen, and Larry R. Patton, Dept. of Justice, Washington, D. C, C. Nathan Davis, Asst. U. S. Atty., Macon, Ga.

**For defendant:** Rober J. Fulgency and Albert W. Stubbs, Columbus, Ga.

### Final Judgment

Owens, D. J.: Plaintiff, United States of America, having filed its complaint herein on April 8, 1975 and the parties hereto, by their respective attorneys having consented to the making and entry of this Final Judgment without trial or adjudication of any issue of fact or law herein, and without admission by either party in respect to any issue;

Now, Therefore, before any testimony has been taken herein and upon consent of the parties hereto, it is hereby,

Ordered, Adjudged and Decreed as follows:

I

[ *Jurisdiction*]

This court has jurisdiction over the subject matter of this action and of the parties hereto. The Complaint states claims upon which relief may be granted against the defendant under Section 1; of the Act of Congress of July 2, 1890, as amended (15 U. S. C. Section 1), commonly known as the Sherman Act.

II

[ *Definitions*]

As used in this Final Judgment

(A) "Distributor" shall mean any person who buys "snack foods" or other products for resale.

(B) "Snack Foods" shall mean food products which are intended for immediate consumption or away-from-home eating and include, but are not limited to, such items as candies, peanut items, baked goods, potato chips, pretzels and sandwiches.

(C) "Manufacturer" shall mean any person manufacturing and/or selling or offering to sell snack foods or other products to Distributors.

**©2018 CCH Incorporated and its affiliates and licensors. All rights reserved.**
**Subject to Terms & Conditions: http://researchhelp.cch.com/License_Agreement.htm**

1

(D) "Person" shall mean any partnership, firm, corporation, individual or any other business or legal entity.

III

[ *Applicability*]

The provisions of this Final Judgment applicable to the defendant shall also apply to each of its directors officers, agents, employees, subsidiaries, successors and assigns, and to all persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

IV

[ *Sales to Distributors*]

The defendant, Tom's Foods Ltd., is enjoined and restrained from:

(A) Entering into, adhering to, enforcing or claiming any right under any contract, agreement, understanding, plan or program with any Manufacturer that directly or indirectly,

(1) restricts, prevents, limits or interferes with the sale of any product to any Distributor; or

(2) restricts, limits, fixes, stabilizes or interferes with the price, price discounts, or other terms or conditions for the sale of any product to any Distributor.

(B) The provisions of Section IV(A) above shall not apply to those products manufactured by another Manufacturer under Tom's Foods Ltd. trademarks solely for sale to Tom's Foods Ltd.

V

[ *Agreements with Distributors*]

The defendant, Tom's Foods Ltd., is enjoined and restrained, for a period of ten years following the date of entry of this Final Judgment, from:

(A) Entering into, adhering to, enforcing or claiming any right under any contract, agreement, understanding, plan or program with any Distributor that, directly or indirectly,

(1) restricts, prevents, limits or interferes with the purchase of snack foods by any Distributor from any other Manufacturer, or

(2) restricts, limits, fixes, stabilizes or interferes with the price, price discounts, or other terms or conditions for the purchase of snack foods by any Distributor from any other Manufacturer.

VI

[ *Notice*]

(A) The defendant is directed and ordered to provide within sixty (60) days from the date of entry of this Final Judgment, by registered mail, all current Distributors and Manufacturers (to the extent known to the defendant) with a letter containing the following statement:

> As a result of a Consent Judgment entered by the United States District Court for the Middle District of Georgia in *United States v. Tom's Foods Ltd.* Civil No… … …, each distributor is free to select any manufacturer or supplier of snack food products for resale, and to determine the quantity, price or kind of each product he will purchase without interference from Tom's Foods Ltd.

> Manufacturers and suppliers are free to offer to distributors any product, or any price discount or promotion for any product, without the approval of Tom's Foods Ltd., except for these products bearing the Tom's Foods Ltd. trademark that they manufacture solely for sale to Tom's.

(B) The defendant is directed and ordered to file with the Court and serve upon plaintiff, within ninety (90) days from the date of entry of this Final Judgment, a report stating the manner of its compliance with the provisions of paragraph A of this Section VI.

VII

***©2018 CCH Incorporated and its affiliates and licensors. All rights reserved.***
***Subject to Terms & Conditions: http://researchhelp.cch.com/License_Agreement.htm***
2

[ *Compliance*]

For the purposes of determining or securing compliance with the Final Judgment, duly authorized representatives of the Department of Justice shall, upon written request of the Attorney General, or the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to defendant, made to its principal office, be permitted, subject to any legally recognized claim of privilege, (a) access during the office hours of defendant to all books, ledgers, accounts, correspondence, memoranda, and other records and documents in the possession, custody, or control of defendant relating to any matters contained in this Final Judgment and (b) subject to the reasonable convenience of defendant, but without restraint or interference from it, to interview officers, directors, agents, or employees of the defendant, who may have counsel present, regarding any such matter. Upon the written request of the Attorney General, or the Assistant Attorney General in charge of the Antitrust Division, defendant shall submit such written reports with respect to any of the matters contained in this Final Judgment as from time to time may be requested. No information obtained by the means provided in this Section VII shall be divulged by any representative of the Department of Justice to any person other than a duly authorized representative of the Executive Branch, except in the course of legal proceedings to which the United States is a party, for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

VIII

[ *Reports*]

For a period of five (5) years from the date of entry of this Final Judgment, defendant shall submit annually on the anniversary date of this Final Judgment a written report to the plaintiff setting forth the steps taken during the preceding year to inform its officers, directors, agents and employees of its and their obligations under this Final Judgment.

IX

[ *Retention of Jurisdiction*]

Jurisdiction is retained for the purpose of enabling either of the parties to this Final Judgment to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the modification, construction or carrying out of this Final Judgment, for the enforcement of compliance therewith, and the punishment of violations thereof. Entry of this Final Judgment is in the public interest.

*©2018 CCH Incorporated and its affiliates and licensors. All rights reserved.*
*Subject to Terms & Conditions: http://researchhelp.cch.com/License_Agreement.htm*

3

A24